■ BLANCHE HOGEBOOM, Appellant, v. MAURICE R. PROTTS, Respondent.— REYNOLDS, J. Appeal from an order of the ·Supreme Court entered June 14, 1967 in Cortland County, which set aside a verdict in favor of appellant and ordered a new trial. This negligence action was brought by appellant, a pedestrian, for personal injuries sustained when she was struck by a pickup truck while crossing South Cayuga Street on her way to the bus terminal

in the City of Ithaca, N. Y., on the 22nd day of December, 1963. The accident occurred at about 5:10 P.M. It is conceded that it was dark and that the street lights were on as well as lights from used car lots located on both sides of the street. It had previously been snowing and the surface of the road had slush on it. As appellant attempted to cross South Cayuga Street from the west side to the east side, between the intersections of Green and Clinton Streets with South Cayuga Street, she was struck·by respondent's truck which was traveling north in the northbound lane. South Cayuga Street between Clinton and Green Streets is approximately 425 feet long and the site of the accident was about 280 feet north of the Clinton Street intersection and 142 feet south of the Green Street intersection. There is no dispute that she could have crossed at either intersection on her way to the terminal; that she had passed the Clinton Street intersection which had traffic control signals controlling vehicular and pedestrian traffic. Appellant testified that she did not remember seeing any cars but that probably cars were parked along the curb on the west side of the street. There was testimony that there were cars parked on the west side of South Cayuga Street but apparently none on the easterly side. She further related that she stepped off the curb a step or two and looked to the north and south. She stated that she presumed that she could see as far south as the intersection of South Cayuga and Clinton Streets and that no cars were coming from either the north or south as she began to cross the street. She also testified that she continued to look to the right and left as she crossed the street and first saw respondent's truck when she was about a pace or two into the northbound lane of travel. She stopped and was almost immediately struck by respondent's truck. The senior police officer who investigated the accident testified that South Cayuga Street was 36 feet wide, and that he found appellant lying in the northbound lane, a distance of 16 feet north of respondent's truck. Respondent was traveling from his home to his employment as a fireman with the City of Ithaca Fire Department and was driving his 1962 Dodge pickup truck. He related that he had stopped his vehicle for a traffic light at the intersection of South Cayuga and Clinton Streets and as he proceeded through the intersection after the light had changed there was no vehicle proceeding in the northbound lane ahead of him; that his headlights were on low beam and that he was proceeding at a speed of 8-10 miles per hour. He described the weather conditions as misty; that as he passed through the Clinton Street intersection he saw cars approaching from the north in the southbound lane, and that he did not see the appellant until she was four to five feet in front of him in his lane of traffic and that she was struck by the left front of his car. The trial court, in setting aside the verdict and granting a new trial, observed that while the jury could reasonably find that respondent was negligent, that their finding of appellant's freedom from contributory negligence was against the weight of the evidence. Under subdivision (a) of section 1152 of the Vehicle and Traffic Law every pedestrian crossing a roadway at any point other than within a marked crosswalk must yield the right of way to all vehicles on the roadway. At the same time every driver of a vehicle must exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding a horn when necessary (Vehicle and Traffic Law, § 1154). The fact that a pedestrian chooses to cross a street at a point other than an intersection or a regular crossing will not, of itself, constitute contributory negligence so as to bar recovery for personal injuries sustained when the pedestrian is struck by an automobile (*Smith* v. *Morelli,* 274 App. Div. 1020; *Uralsky* v. *Gribbon,* 242 App. Div. 533; *Kimball* v. *Brill,* 205 App. Div. 776; 4 N. Y. Jur., Automobiles, § 367; compare *Pierce* v. *Armour & Co.,* 226 App. Div. 393,

affd. 253 N. Y. 568). Additionally "A pedestrian who crosses a street at a place where there is no regular crossing may be chargeable with some additional vigilance because it is not a place set aside for the crossing of foot passengers, although even at such a place drivers are required to be watchful and careful" (*Baker* v. *Close*, 204 N. Y. 92, 95). The question whether such pedestrian has exercised the degree of care which an ordinarily prudent person would use is usually for the jury. (See *Cooperstein* v. *Eden Brick & Supply Co.*, 238 N. Y. 200; *Fitzgerald* v. *Russell*, 155 App. Div. 854.) On this record it is difficult to disagree with the conclusion of the Trial Judge that the weight of the evidence is such that a jury could find that the respondent was negligent and that the appellant had not met her burden · of proving her freedom from contributory negligence. Both testified that they did not see one another until almost the moment of impact. Appellant testified that as she was crossing the street she continued to look to the right and left. Additionally, there is no evidence that respondent was proceeding at an excessive speed or that his lights were not on (see *Smith* v. *Morelli*, 274 App. Div. 1020). Under CPLR 4404 (subd. [a]) the trial court has the power to grant judgment notwithstanding the verdict or it can set aside the verdict because it is of the opinion that the verdict is contrary to the weight of the evidence and order a new trial. Here the trial court in so acting held that the "finding of freedom from contributory negligence is against the weight of the evidence." See *Mann* v. *Hunt* (283 App. Div. 140, 141–142) where the court said: "The problem presented by the term 'against the weight of evidence', indeed, is very similar in its implications to the problem of what the profession has meant by the word 'reasonable' applied to private conduct or official act. Therefore, while the rule is not easily, or at all, capable of being laid down in plain words as an infallible guide to decision and can be illustrated only imperfectly by opinions in past cases, it is a rule which the profession understands as the cumulative product of its own experience. A court which reviews the weight of evidence as well as the law, as does an Appellate Division, must approach an appeal from a decision by a trial judge setting aside a verdict in the light of the nature of the duty and the subtle and not easily definable measure of responsibility which the judge exercises in decision. The duty of the judge to supervise the reasonableness of the verdicts returned to him ought to be viewed liberally on appeal because the independence of mind with which that duty is exercised is ingredient to the sound health of the judicial process. (*Lipschitz* v. *Sloan*, 280 App. Div. 855.) Even if the judges who look at the case on appeal would not themselves have set the verdict aside had they acted in the first instance, they should not find in this alone a ground for reversal. If the case comes within the area within which judicial interference would not be regarded by the profession as unreasonable, the exercise of the power thus to deal with the verdict ought to be upheld. * * * It is our view that the case lies well within the area of the judge's power to set the verdict aside in the supervision of the jury's work before him. Having himself heard the facts developed from the witnesses and sensed the atmosphere and texture of the trial, he had the duty of maintaining reasonable consistency between the weight of evidence and the verdict reached. Appellant has not demonstrated, as he is bound to do to have a reversal, that the order for a new trial was not reasonably grounded. There is 'no standard by which to determine' when a verdict should be set aside as against the weight of evidence. The decision 'depends upon the discretion of the court' (*McDonald* v. *Metropolitan St. Ry. Co.*, 167 N. Y. 66, 69)." Obviously, no set standard exists by which it can be determined that a verdict is against the weight of the evidence. Essentially such decisions depend upon the discretion of the court.

Here the trial court heard the facts developed from the witnesses and, as we view the record, he providently exercised his judicial prerogative in ordering a new trial. Order affirmed, without costs. Gibson, P. J., Herlihy and Reynolds, JJ., concur in memorandum by Reynolds, J.; Staley, Jr., and Gabrielli, JJ., dissent and vote to reverse in a memorandum by Gabrielli, J. Gabrielli, J. (dissenting). I am unable to agree with the majority that a new trial should be had. The testimony produced upon the trial clearly shows the existence of questions of fact properly presented to the jury whose determination should not have been disturbed. On these motions, the testimony must be viewed in a light most favorable to the verdict or, to put it another way, most favorable to the party being moved against. (*Fischer* v. *New York Cent. R. R. Co.*, 188 Misc. 72, affd. 273 App. Div. 135, app. dsmd. 297 N. Y. 956; *Vanderhule* v. *Berinstein*, 285 App. Div. 290.) The respondent concedes that in the present posture of the case, we should view the facts in a light most favorable to the appellant, and in so doing, we conclude there should be no quarrel with the result reached by the jury. There was testimony that the plaintiff as she started to cross the street, looked both ways and at that time saw no approaching vehicles. She negotianted the first half of the street without incident and just as she stepped across the center line, saw the defendant's truck whereupon she stopped and was subsequently struck by him. It should be emphasized, of course, that this is not a "darting-out" or "stepping-off-the-curb" case, but actually a situation where the plaintiff, having looked both ways, proceeded across the street and was struck because of the found negligence of the defendant. The court determined, as the only reason for setting aside the verdict, that the jury finding of freedom from contributory negligence was against the weight of the evidence, and in affirming, the majority implicitly agrees that the question of the defendant's negligence was clearly for the jury and no question is either raised concerning this nor is there any suggestion that the jury verdict was in error in this regard. There was testimony to the effect that as soon as she saw the defendant, the plaintiff stopped and was then struck by the left front of his truck; and it is undisputed that at this point she was a "couple of feet" or "two paces" over the center line of the street. According to the defendant's testimony, as he was driving down the street the left side of his truck would have had to be very close to the center line of the street, with nearly eight feet of unobstructed pavement to his right. Under these circumstances, it is inconceivable that anything the defendant claims the plaintiff did or failed to do, could have been a proximate cause of the accident and her injuries. Despite the factual situation presented the court in its decision stated, among other things, that "The defendant had the right of way" and in ordering a new trial, held that the finding that the plaintiff was free from contributory negligence, was against the weight of the evidence. It is obvious from a reading of the entire decision of the trial court, that its determination was based largely, if not entirely, upon a holding that the plaintiff did not look "intelligently" as she crossed the street. The law does not say how often one must look, or precisely how far, or when or from where (*Knapp* v. *Barrett*, 216 N. Y. 226). If, for example, a person looks as he starts to cross, and the way seems clear, he may not be bound as a matter of law to look again. As a matter of fact it has been held that a charge saying that the pedestrian owed a duty not only to look before he started to cross but to keep on the lookout while crossing, was erroneous (*Dlugoff* v. *Tecklin*, 263 App. Div. 998). As indicated, it is urged that since plaintiff testified she looked and failed to see the defendant, her testimony was incredible and, in support of this argument, respondent cites *Betancourt* v. *Wilson* (3 A D 2d 465), which dis-

cussed the rule of pedestrian cases similar to the one at bar. We would point out that the contention advanced by respondent was rejected by the Court of Appeals when it reversed *Betancourt* in 4 N Y 2d 808 on the ground there were questions of fact as to negligence and contributory negligence. In writing for the minority in the Appellate Division, Justice Bergan (pp. 471–472) stated: "On the question of looking and seeing, even in *Weigand* v. *United Traction Co.* (221 N. Y. 39), the classic and frequently cited prototype of cases of the adult guilty of contributory negligence for failing to see what was plainly in sight, the court declined to dispose of the case as a matter of law, but ordered a new trial. The chief utilization of this rule has been on railroad or trolley tracks; and even in such a case where the court went further to dispose of the whole issue as a matter of law because of a failure to look or see, it was at the same time usually able to say as a matter of law there was no negligence established against the railway company. Illustrative of this is *Unger* v. *Belt Line Ry. Corp.* (234 N. Y. 86). The cases where it can be held that an adult may not recover because he has been guilty of contributory negligence as a matter of law are unusual cases and they are certainly rare as applied to the use of public streets. As Judge Werner noted with approval in *Eastland* v. *Clarke* (165 N. Y. 420, 426) the inference of negligence must be 'certain and uncontrovertible' to be decided as a matter of law". We do not disagree with the principles enunciated in *Baker* v. *Close* (204 N. Y. 92), as cited by the majority, but we would point out that in that case both the Appellate Division and the Court of Appeals affirmed a judgment for the plaintiff pedestrian, over a claim that she was contributorily negligent, and held that all issues were properly submitted to a jury, whose verdict should not be disturbed; nor do we disagree with the principles set forth in *Fitzgerald* v. *Russell* (155 App. Div. 854), as cited by the majority, for there this court implicitly held that the issue of contributory negligence was for the jury. Upon the record before us, the degree of care required under all the circumstances, where, when and whether the plaintiff looked before crossing the street, and what, if anything, she could see of the approaching truck, the speed of the truck which struck her not only from what the defendant stated but the physical facts as well, what warning she had of the approach of the truck, were, among others, questions of fact to be resolved by the trier of the facts upon conflicting testimony from which differing inferences might reasonably be drawn. The court's decision to submit these questions to the jury was properly made, a decision from which there should, under these circumstances, have been no retreat (e.g. *Dashnau* v. *City of Oswego*, 204 App. Div. 189, app. dsmd. 236 N. Y. 542). A right of way, like many other rules, will establish precedence when rights might otherwise be balanced (*Ward* v. *Clark*, 232 N. Y. 195), and "It is for that reason that, even though it be established as matter of law that one party had the right of way over the other, the issue of negligence or contributory negligence may still be a question of fact inasmuch as right of way rules are seldom absolute and are usually factors entering into the general context of reasonable care" (*Healy* v. *Rennert*, 9 N Y 2d 202, 210). A jury verdict should be set aside only in cases where the verdict seems palpably wrong and it can be plainly seen that the preponderence is so great that the jury could not have reached their conclusion upon "any fair interpretation of the evidence." (4 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4404.09.) Such is not the case here. Once it is determined that a question of fact exists, that determination ought not be set aside unless the court "can see that no reasonable man would solve the litigation in the way the jury has chosen to do" (*Rapant* v. *Ogsbury*, 279 App. Div. 298, 299; see, also, *Triggs* v. *Advance Trucking Corp.*, 23 A D 2d 777, 778; *Blodgett* v. *Temple Beth Emeth*, 28 A D

2d 769). The order should be reversed, on the law and the facts, and the verdict reinstated, with costs and disbursements.